313 Ga. 132
FINAL COPY

S21G0430.  GARDEI v. CONWAY et al.

MCMILLIAN, Justice.

Carl Gardei filed a petition for declaratory judgment against R. L. "Butch" Conway, the Sheriff of Gwinnett County, and D. Victor Reynolds, the Director of the Georgia Bureau of Investigation ("GBI"), in their individual capacities (collectively "Respondents"),[1] alleging that Respondents' continued enforcement against him of the statutory requirements governing Georgia's Sex Offender Registry (the "Registry"), see OCGA §§ 42-1-12 through 42-1-19 (the "Registry Act"), violated his constitutional rights. The trial court dismissed Gardei's petition on the ground that his claims for relief were time-barred under OCGA § 9-3-33,[2] the two-year statute of

---

[1] Gardei originally filed the declaratory judgment action against the Respondents in their official and individual capacities, but he ultimately amended the petition to assert claims against the Respondents individually.

[2] OCGA § 9-3-33 provides:

Except as otherwise provided in this article, actions for injuries to the person shall be brought within two years after the

limitation for personal injury claims, because Gardei had initially registered under the Registry Act in 2009 and every year thereafter. The Court of Appeals affirmed in a divided opinion. See *Gardei v. Conway*, 357 Ga. App. 539 (851 SE2d 170) (2020). We granted Gardei's petition for certiorari, noting our particular concern as to whether Gardei's claims for declaratory and injunctive relief are subject to the limitation period set forth in OCGA § 9-3-33 and whether any applicable statute of limitation was tolled based on the requirement that Gardei annually renew his sex-offender registration. As explained below, we conclude that although Gardei's claims are subject to the two-year statute of limitation under OCGA § 9-3-33, because he seeks only prospective relief, the statute of limitation on those claims has not yet begun to run.[3] Therefore, we reverse the Court of Appeals's judgment holding that Gardei's

---

right of action accrues, except for injuries to the reputation, which shall be brought within one year after the right of action accrues, and except for actions for injuries to the person involving loss of consortium, which shall be brought within four years after the right of action accrues.

[3] And because we conclude that Gardei's declaratory judgment claims are not time-barred, we do not reach the issue of whether the statute was tolled, as further discussed in Division 4 below.

claims are time-barred and remand the case for further proceedings.

Because we are reviewing an order on a motion to dismiss, we accept as true the well-pled material allegations of Gardei's amended petitions and resolve any doubts in his favor. See *Williams v. DeKalb County*, 308 Ga. 265, 270 (2) (840 SE2d 423) (2020). Viewed in that light, Gardei's petition alleges that he pleaded guilty in 1992 to three counts each of sexual abuse, attempted sexual assault, and kidnapping in Arizona. He was released from prison in 2003, without any requirement for additional supervision or registration in Arizona. However, Gardei immediately moved to New Mexico, where he was required to register as a sex offender for a period of ten years based on his Arizona convictions. Gardei then moved from New Mexico to Georgia in 2009, before the ten-year New Mexico registration requirement had expired. Upon his arrival in Georgia, Gardei registered as a sex offender in accordance with the then-existing version of the Registry Act.[4] Since that time, Gardei

---

[4] Gardei moved to Georgia while his ten-year sex-offender registration requirement under New Mexico law was still in effect, and at the time of the

has complied with the Registry Act's requirement that he renew his sex offender registration each year. See OCGA § 42-1-12 (f) (4).[5]

However, Gardei now asserts that his Arizona offenses would not have required his registration on any basis other than the nonresident provisions of OCGA § 42-1-12 (e) (6) to (8) and that he has not committed any other criminal offenses. Therefore, since he

move, Georgia's Registry Act provided that registration was required by any person who:

> (6) Is a nonresident sexual offender who changes residence from another state or territory of the United States to Georgia who is required to register as a sexual offender under federal law, military law, tribal law, or the laws of another state or territory, regardless of when the conviction occurred;
> (7) Is a nonresident sexual offender who enters this state for the purpose of employment or any other reason for a period exceeding 14 consecutive days or for an aggregate period of time exceeding 30 days during any calendar year regardless of whether such sexual offender is required to register under federal law, military law, tribal law, or the laws of another state or territory; or
> (8) Is a nonresident sexual offender who enters this state for the purpose of attending school as a full-time or part-time student regardless of whether such sexual offender is required to register under federal law, military law, tribal law, or the laws of another state or territory.

Ga. L. 2006, p. 379, § 24 (former OCGA § 42-1-12 (e) (6)-(8) (2006)). OCGA § 42-1-12 (e) (6)-(8) has been amended several times since 2009.

[5] The Registry Act provides that any sex offender required to register under the act must "[r]enew the required registration information with the sheriff of the county in which the sexual offender resides or sleeps by reporting in person to the sheriff within 72 hours prior to such offender's birthday each year to be photographed and fingerprinted[.]" OCGA § 42-1-12 (f) (4).

would no longer be required to be registered as a sexual offender in New Mexico, Gardei argues he should no longer be subject to registration in Georgia or to the annual renewal requirement.

On October 22, 2018, Gardei filed his petition against Respondents,[6] asking the trial court for declaratory and injunctive relief from Respondents' continued enforcement of OCGA § 42-1-12, which he asserted violated the equal protection clause, due process clause, and the privileges and immunities clause of the United States Constitution and parallel provisions in the Georgia Constitution, and the retroactive laws clause and the citizen status clause of the Georgia Constitution, both facially and as applied. Gardei asked the trial court to declare that the statute is unconstitutional and that he is not subject to its requirements. Gardei also sought an injunction barring the enforcement of the Registry Act requirements against him and requested an award of his attorney fees, expenses, and costs.

---

[6] Gardei's petition initially named then-GBI Director Vernon Keenon as a respondent, but following Keenon's retirement in January 2019, Reynolds was substituted for him as a respondent.

After Gardei filed his petition, Conway and Reynolds each moved for dismissal on the ground that Gardei failed to state a claim under OCGA § 9-11-12 (b) (6). The trial court granted the Respondents' motions to dismiss, concluding that Gardei's claims are time-barred under the two-year statute of limitation for personal injury actions set forth in OCGA § 9-3-33. Gardei appealed,[7] and the Court of Appeals, in a divided panel opinion, affirmed the trial court's dismissal of the petition, holding that OCGA § 9-3-33 applied to Gardei's claims, see *Gardei*, 357 Ga. App. at 541 (1), and that the annual registration requirement did not toll the limitation period under the "continuing violation" doctrine.[8] See id. at 541-42 (2). In

---

[7] Gardei originally appealed the trial court's order to this Court in Case No. S20A0200, but we transferred the case to the Court of Appeals because the issues raised did not invoke the Court's appellate jurisdiction.

[8] The Court of Appeals explained that

[u]nder the continuing-violation doctrine, a plaintiff can sue for actions that occurred outside the applicable limitations period if a defendant's conduct is part of a continuing practice and the last act evidencing the continuing practice falls within the limitations period. An analysis of whether an action constitutes a continuing violation distinguishes between the present consequence of a one-time violation, which does not extend the limitations period, and the continuation of the violation into the present, which does.

*Gardei*, 357 Ga. App. at 541 (2) (citations and punctuation omitted). The Court

6

dissent, then-Chief Judge McFadden agreed that OCGA § 9-3-33 applied to Gardei's claims, but concluded that, because Gardei claims the "violations of his constitutional rights have continued into the present because he must re-register as a sex offender every year," his action is not time-barred under the continuing violation doctrine. Id. at 545 (2).

1. The threshold issue is whether a statute of limitation applies to Gardei's claims. Gardei argues that the Declaratory Judgment Act is a statutorily created cause of action and, because the Act does not include a statute of limitation, declaratory judgment actions are not subject to any statute of limitation. We disagree.

The Declaratory Judgment Act provides:

In cases of actual controversy, the respective superior courts of this state and the Georgia State-wide Business Court shall have power, upon petition or other appropriate pleading, to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed; and the declaration shall have the force and effect

of Appeals concluded that the renewal provision was the present consequence of one constitutional violation, i.e., Gardei's initial registration. Implicit in this analysis was the conclusion that Gardei's claims arose in 2009 and therefore OCGA § 9-3-33 would bar his claims absent any tolling.

of a final judgment or decree and be reviewable as such. OCGA § 9-4-2 (a). As described in the Act, the purpose "is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations[.]" OCGA § 9-4-1. See also *Love v. Fulton County Bd. of Tax Assessors*, 311 Ga. 682, 696 (3) (c) (859 SE2d 33) (2021) ("[T]he object of the declaratory judgment is to permit determination of a controversy before obligations are repudiated or rights are violated." (citation and punctuation omitted)); *Baker v. City of Marietta*, 271 Ga. 210, 213 (1) (518 SE2d 879) (1999) ("The Declaratory Judgment Act provides a means by which a superior court simply declares the rights of the parties or expresses its opinion on a question of law, without ordering anything to be done." (cleaned up)).

Thus, the Declaratory Judgment Act merely creates a procedural device for the declaration of rights between parties and does not otherwise override substantive or procedural law. Indeed, over 70 years ago, this Court determined that the predecessor to the current Declaratory Judgment Act "does not nullify statutes of

8

limitations and established principles of law[.]" *Bingham v. Citizens & Southern Nat. Bank*, 205 Ga. 285, 288 (53 SE2d 228) (1949). Accord *Burgess v. Burgess*, 210 Ga. 380, 383 (2) (80 SE2d 280) (1954) (quoting *Bingham*); *Capitol Infrastructure, LLC v. The Plaza Midtown Residential Condo. Assn., Inc.*, 306 Ga. App. 794, 800 (1) (702 SE2d 910) (2010) (rejecting party's contention that the Declaratory Judgment Act "tolls, enlarges, or otherwise nullifies" the applicable limitation period). See also OCGA § 9-3-3 ("Unless otherwise provided by law, limitation statutes shall apply equally to all courts.").

In *Bingham*, we held that the trial court properly sustained demurrers to the petitioner's suit for declaratory judgment to declare his rights under a will after two previous proceedings in the same court had adjudicated the issues. See 205 Ga. at 285-86. These prior proceedings occurred more than three years before the filing of the declaratory judgment action was brought, and therefore, the Court held that the petitioner's action was time-barred under Ga. Code § 3-702 (1933), which provided that "[a]ll proceedings of every

kind in any court of this State to set aside judgments or decrees of the courts, shall be made within three years from the rendering of said judgments or decrees." See also id. at 288 ("Bingham's petition does not show that any application was made to vacate or set aside the judgment procured at the instance of the trustees within the statute of limitations. (Code, § 3-702)."). We see no reason to depart from this long-standing precedent and thus, we conclude that, even though the Declaratory Judgment Act does not include a specific statute of limitation, declaratory judgment actions generally are subject to statutory limitation periods.

2. Having determined that Gardei's declaratory judgment action is subject to a statute of limitation, the next step in the analysis is to determine what statute of limitation applies to his claims.

(a) Although we have not addressed the issue, several federal appellate courts have concluded that actions "for declaratory relief will be barred to the same extent the applicable statute of limitations bars the concurrent legal remedy." *Algrant v. Evergreen*

10

*Valley Nurseries Ltd. Partnership*, 126 F3d 178, 181 (II) (3d Cir. 1997). See also *Petro Harvester Operating Co., L.L.C. v. Keith*, 954 F3d 686, 699 (III) (C) (5th Cir. 2020) ("[A]s a general rule, an action for declaratory judgment will be barred to the same extent that the applicable statute of limitations bars an underlying action in law or equity." (citation and punctuation omitted)); *Intl. Assn. of Machinists & Aerospace Workers v. Tennessee Valley Auth.*, 108 F3d 658, 668 (IV) (6th Cir. 1997) (same); *Levald, Inc. v. City of Palm Desert*, 998 F2d 680, 688-89 (II) (B) (1) (b) (9th Cir. 1993) (same); *Stone v. Williams*, 970 F2d 1043, 1048 (I) (A) (2d Cir. 1992) ("Because a declaratory judgment action is a procedural device used to vindicate substantive rights, it is time-barred only if relief on a direct claim would also be barred."); *Clulow v. State of Oklahoma*, 700 F2d 1291, 1302 (IV) (B) (10th Cir. 1983) (same), overruled on other grounds, *Garcia v. Wilson*, 731 F2d 640 (10th Cir. 1984).

This principle is consistent with how this Court has determined the applicable limitation period for various claims in the absence of a specific statute of limitation for the cause of action. In

11

*Bingham*, for example, we applied, without analysis, the limitation period for setting aside a judgment, when the crux of the action was seeking a declaration adverse to judgments already obtained by the respondents. See 205 Ga. at 288.

Also, in equity cases, we have long held that "[c]ourts of equity, although not in all cases bound by the statute of limitations, unless expressly brought within its provisions, have nevertheless acted, in this respect, in analogy to courts of law, and given effect to the statute in all cases of concurrent jurisdiction[.]" *Moore v. Moore*, 103 Ga. 517, 524-25 (2) (30 SE 535) (1898) (citations and punctuation omitted). Similarly, and more recently, in *Daniel v. American Optical Corp.*, 251 Ga. 166, 167 (304 SE2d 383) (1983), a federal appellate court certified the question of what statute of limitation applied to a strict liability cause of action when the strict liability statute did not include a specific statute of limitation. We held that the general two-year statute of limitation for personal injury applied because "the scope of application of this statute of limitations is determined by the nature of the injury sustained rather than the

legal theory underlying the claim for relief." Id. at 168 (1). Accord *Godwin v. Mizpah Farms, LLLP*, 330 Ga. App. 31, 38 (3) (b) (766 SE2d 497) (2014) ("Georgia has no specific statute of limitation for breach of fiduciary duty claims. Instead, we examine the injury alleged and the conduct giving rise to the claim to determine the appropriate statute of limitation."). Accordingly, we conclude that in declaratory judgment actions, the statute of limitation for the analogous legal remedy will also apply to the declaratory judgment action.

(b) That brings us to the question of what statute of limitation applies to Gardei's constitutional claims. For Gardei's claims arising under the United States Constitution, the most closely analogous claim would be under 42 USC § 1983, which establishes a civil action against "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" No specific statute of limitation applies to § 1983 claims under federal law, but the United States Supreme

13

Court has concluded that these claims "are best characterized as personal injury actions," subject to state personal injury statutes of limitation. *Owens v. Okure*, 488 U.S. 235, 240-41 (II) (A) (109 SCt 573, 102 LE2d 594) (1989) (concluding that 42 USC § 1983, which allows redress for civil rights violations, "confers a general remedy for injuries to personal rights" (citations and punctuation omitted)). See also *McNair v. Allen*, 515 F3d 1168, 1173 (II) (11th Cir. 2008) ("All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitation governing personal injury actions in the state where the § 1983 action has been brought."); *Lovett v. Ray*, 327 F3d 1181, 1182 (11th Cir. 2003) (applying OCGA § 9-3-33 to § 1983 claims in Georgia).

Although this Court has not considered this issue, Georgia's Court of Appeals has long recognized that, generally speaking, "the applicable limitation period [for a claim under 42 USC § 1983] is the two-year period for personal injury set out in OCGA § 9-3-33." *Day v. Brown*, 207 Ga. App. 134, 135 (1) (427 SE2d 104) (1993). See also *Wilson v. Cromer*, 356 Ga. App. 763, 767 (2) (847 SE2d 213) (2020);

14

*Freeman v. City of Brunswick*, 193 Ga. App. 635, 635-36 (388 SE2d 746) (1989).

We agree and now hold that the two-year limitation period under OCGA § 9-3-33 for personal injury claims applies to claims for violations of the federal Constitution involving injuries to individual rights. And, although Georgia does not have a statutory cause of action like 42 USC § 1983 under which a person can assert claims under the Georgia Constitution, declaratory judgment actions for claims asserting the violation of individual rights are authorized under our State's Constitution. We see no reason why the two-year limitation period would not apply equally to Gardei's declaratory judgment claims for violations of his rights under the Georgia Constitution. Cf. *Daniel*, 251 Ga. at 168 (1) ("We find no reason to differentiate between actions for personal injuries brought under a theory of strict liability as opposed to negligence for purposes of applying OCGA § 9-3-33 (Code Ann. § 3-1004).").

3. Having concluded that the two-year limitation period for personal injury applies to Gardei's claims, we must now examine

15

when the right of action accrued in order to determine if Gardei's declaratory judgment action was timely brought. OCGA § 9-3-33 provides: "Except as otherwise provided in this article, actions for injuries to the person shall be brought within two years after the right of action accrues," with exceptions not applicable here. For purposes of this statute of limitation, "[a]n action for personal injury does not 'accrue' until the tort is complete," *Amu v. Barnes*, 283 Ga. 549, 551 (662 SE2d 113) (2008) (citation and punctuation omitted), and a personal injury tort claim is complete only "when an injury results from [a] wrongful act or omission." *Harvey v. Merchan*, 311 Ga. 811, 815 (2) (a) (860 SE2d 561) (2021). See also *Everhart v. Rich's, Inc.*, 229 Ga. 798, 801 (2) (194 SE2d 425) (1972) ("On a tort claim for personal injury the statute of limitation generally begins to run at the time damage caused by a tortious act occurs, at which time the tort is complete.").

To determine when the injury was incurred and the right of action accrued, we look first at the requirements of the Registry Act. Any sex offender required to register under the Registry Act must

16

renew that registration each year under OCGA § 42-1-12 (f) (4). The Registry Act requires that the sex offender must "[c]ontinue to comply with the registration requirements of [the Registry Act] for the entire life of the sexual offender, excluding ensuing periods of incarceration." OCGA § 42-1-12 (f) (6).[9] Any sex offender who fails to comply with these registration requirements "shall be guilty of a felony and shall be punished by imprisonment for not less than one nor more than 30 years[.]" OCGA § 42-1-12 (n) (3).

Gardei claims that OCGA § 42-1-12 is unconstitutional, both facially and as applied to him; seeks a declaration that he is therefore not subject to the Registry Act; and asks that the Respondents be enjoined from further enforcement of the Registry Act against him.[10] Here, the Court of Appeals determined that the renewal requirement was a consequence of Gardei's initial sex

---

[9] The Registry Act also provides a method for sex offenders who meet certain requirements to petition a superior court for release from the Registry requirements. See OCGA § 42-1-19. However, Gardei asserts in his petition that he is not eligible for removal from the Registry under this or any other statutory provision.

[10] At oral argument, Gardei's counsel confirmed that Gardei is seeking only prospective relief in this action.

offender registration in 2009, which Gardei alleges also violated his rights, and because Gardei was aware of all the facts necessary to pursue his constitutional claims at that time, the renewals did not create any causes of action separate from that initial alleged constitutional violation. See *Gardei*, 357 Ga. App. at 541-42 (2). We disagree because here the correct inquiry as to when the cause of action accrues does not focus on when Gardei became aware of sufficient facts to pursue a constitutional claim, but rather when Gardei suffered the injury that completed the tort.

The Registry Act creates a lifetime requirement that Gardei report in person to his local sheriff's office each year to renew his registration. See OCGA § 42-1-12 (f) (4). Although Gardei incurred the same or similar consequences upon his initial registration and each subsequent renewal, he was subject to a new felony prosecution on each of these occasions — in other words, each year — if he failed to comply. Assuming for purposes of the appeal that application of the Registry Act violated Gardei's constitutional rights since 2009, or became a violation at some point in the interim, a wrongful act

occurred each time Gardei was required to register in violation of his rights. Each such renewal extended the allegedly illegal consequences of registration for another year and resulted in a new wrongful act, a new injury, and the accrual of a new cause of action.[11] Likewise, a new wrongful act and a new injury will occur each year if Gardei remains subject to the renewal requirement under OCGA § 42-1-12 (f) (4).

We conclude that because Gardei's petition seeks a determination only as to whether he is required to comply with the Registry Act in the future, his causes of action have not yet

---

[11] In this way, the renewal requirement is somewhat akin to the facts underlying an abatable continuing nuisance.

> A nuisance, permanent and continuing in its character, the destruction or damage being at once complete upon the completion of the act by which the nuisance is created, gives but one right of action, which accrues immediately upon the creation of the nuisance, and against which the statute of limitations begins, from that time, to run. Where a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie. This action accrues at the time of such continuance, and against it the statute of limitations runs only from the time of such accrual.

*City of Atlanta v. Kleber*, 285 Ga. 413, 416 (1) (677 SE2d 134) (2009). Likewise, where mandated registration under the Registry Act violates an individual's rights, the renewal requirement repeats the harm on an annual basis.

accrued.[12] Accordingly, the trial court and the Court of Appeals erred in holding that Gardei's action for declaratory and injunctive relief is time-barred, and we reverse and remand the case for further proceedings in accordance with this opinion.

4. Given our holding in Division 3, we need not address whether the continuing violation doctrine applies or whether the statute of limitation could otherwise be tolled.

*Judgment reversed and case remanded. All the Justices concur.*

---

[12] Because Gardei has asserted no claims based on past renewals of his registration, we express no opinion as to whether any such claims would be time-barred under OCGA § 9-3-33.

Decided February 1, 2022.

Certiorari to the Court of Appeals of Georgia — 357 Ga. App. 539.

*Yurachek & Associates, Mark A. Yurachek*, for appellant.

*Carothers & Mitchell, Thomas M. Mitchell; Tuwanda R. Williams, Murray J. Weed; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Elizabeth M. Crowder, Tina M. Piper, Assistant Attorneys General, Andrew A. Pinson, Solicitor-General, Drew F. Waldbeser, Assistant Solicitor-General*, for appellee.